The court now calls case 118661, People of the State of Illinois v. Jerry Boston. Are you ready to proceed? Ethel, are you ready? May it please the court, my name is Sarah Curry and I represent Jerry Boston. This case is about the abuse of the grand jury subpoena power by the state and the police to further an independent police investigation. This court should reverse the appellate court's decision and find that Jerry Boston's motion to suppress his palm print should be granted to prevent further abuse of the grand jury process to circumvent the probable cause requirement of the Fourth Amendment. Grand jury number April 195, the grand jury that issued the subpoena for Boston's palm print, was not investigating the murder of Tanya Pipes. The state's attorney was not prosecuting Jerry Boston nor was the state's attorney investigating Pipes' murder. The legislature has conferred upon the grand jury the right to issue subpoenas but only against people whom the state's attorney is seeking an indictment or other people relevant to a matter being prosecuted by the state's attorney. ASA Snow went before grand jury April 195 and asked for a John Doe subpoena, never even mentioning Pipes' name. She had to explain to the grand jury who Boston was, the ex-boyfriend of a woman who had been murdered seven years earlier. This establishes that the grand jury was not investigating Pipes' murder. Snow told the grand jury that the police had information that Boston may be involved in her murder and that the police wanted Pipes' Boston's palm print, establishing that it was the police, not the grand jury, who were investigating Jerry Boston. Snow's statement to the grand jury did not rise to the level of individualized suspicion that this court has held as required for the issuance of a grand jury subpoena for evidence of a non-physical nature such as palm prints. In an unformed statement, ASA Snow told the grand jury that they were seeking a subpoena for Boston's palm prints, that Boston was currently incarcerated in the Department of Corrections on an unrelated matter, and that he was the ex-boyfriend of a woman who had been killed in 1997, and that the police had information that he may be involved. While this court has not specified the quantum level of evidence necessary to establish individualized suspicion, this unsworn statement was not enough. Boston was the victim's ex-boyfriend, and the police had information that he may be involved. In Rende, the First District suggested that there must be a showing of unique knowledge pertaining to the defendant's involvement in the crime. Here, there is no unique knowledge connecting Boston to Pipe's murder. His status as her ex-boyfriend does nothing to connect him to her murder. Snow's statement that the police had information that he may be involved is not a fact connecting him to the murder, nor does it show any unique knowledge. What was this information?  Was it reliable? Was it credible? Why wasn't this information presented before the grand jury? And the fact that Jerry Boston was in prison on an unrelated offense does nothing to connect him to Pipe's murder. Finally, the procedure employed by the police and the state's attorney in obtaining the subpoena of Boston's palm prints established that they were using the grand jury's subpoena power to further their own investigation as an end run around the Fourth Amendment and the probable cause requirement. This was a cold case investigation, the murder having occurred seven years earlier. The police initially went to the state's attorney trying to get a warrant, but were told that they didn't have sufficient probable cause. So they went to ASA Snow, who was a random state's attorney who went before a random grand jury, not one having anything to do with Boston or Pipe's murder, and procured the subpoena for his palm prints. The subpoena was not made returnable to the grand jury, nor was it ever returned to this grand jury. In fact, the grand jury at issue never had any further involvement in this case. All of these factors show that this was an independent police investigation. There was insufficient, there was not the individualized suspicion that this court has said is required for the issuance of such a subpoena, and this was a simple opportunity by the police and the state to procure palm prints when they did not have the probable cause that they needed to do this. Can I ask you a question about the standard of individualized suspicion in the context of an incarcerated person? Is there this, we all understand, the history of this issue where the Supreme Court of the United States generally looked at whether there was a search, a Fourth Amendment violation, an examination of someone's body, a physical characteristic. I said it was not. And then here in Illinois, we took a different look, given our constitutional language in our Fourth Amendment, protecting a right to privacy, and extended a right to privacy that was not in the United States Constitution. But this is a different situation where we also have a great deal of law regarding the lessened rights of privacy for an incarcerated person. Can you address that? Correct. As you state, this is somewhat of a question of first impression because we're not really dealing with the Fourth Amendment here because we're talking about the heightened right to privacy that is afforded to our citizens of Illinois under the Illinois Constitution. And the individualized suspicion standard comes out of that constitutional provision. As such, the cases dealing with parolees, arrestees, probationers, all of these are Fourth Amendment cases, which certainly this court can look at by analogy. But there are no cases that I've found that specifically deal with this individualized suspicion that's based on the heightened constitutional privacy requirement in Illinois. However, when looking at these Fourth Amendment cases, it becomes clear that this diminished expectation of privacy is not relevant where the police are investigating a specific or particular crime. Certainly the First District's language in PEPPERS is dicta. We acknowledge that. But the basis behind it is clear. Where you're talking about probationers or parolees or incarcerated inmates, there's a strong government interest or some specific need greater than that of general law enforcement, which this court has held consistently that the general need for law enforcement is not a broader government interest or a special need that would diminish a person's expectation of privacy. And that is what is at play in this case. Simply because Jerry Boston was incarcerated on a completely unrelated matter did not diminish his Fourth Amendment rights with respect to the police investigation into Pipe's murder. And though we're not specifically dealing with the Fourth Amendment, it shouldn't diminish his rights afforded by the Illinois Constitution, his heightened privacy rights, because the police were investigating a particular specific crime. Does it matter that this was not an invasive search, that this was merely examination of a physical appearance? Well, but that's what this court in Will County found under the Fourth Amendment that those kind of invasions are not prohibited. But under the Illinois Constitution, fingerprints, palm prints, appearance in a lineup, handwriting, voice exemplars, these things that are a lower invasion do are afforded protection under the Illinois Constitution. Does it figure into our lowered expectation of privacy analysis? Not when his incarceration and his status as a felon has nothing to do with the investigation into this particular crime. He, as all the cases dealing with this diminished expectation of privacy, when it's not in relation to some broader government need, then the defendant retains his rights under the Fourth Amendment or, I would argue, rights under the Illinois Constitution that this court laid out in Will County. And the First District in Peppers acknowledged that where the state or the police are investigating a specific or particular crime, the diminished expectation of privacy has no place in the court's consideration. For these reasons, if there are not further questions, we would ask that this court reverse the decision of the appellate court and ask that Jerry Boston's palm prints be suppressed. Thank you. Good morning. I'm Assistant State's Attorney Jeffrey Allen on behalf of the people of the state of Illinois. May it please the court. In August of 1997, Chicago police officers found the bloodied, butchered body of Tanya Pipes. They found her slumped over the bathtub in a pool of bloodied water. Right next to her body was a bloodied palm print left in her own blood by the man that killed her. Police officers, detectives, evidence technicians, as they were known back in 1997, went to that west side apartment that Tanya shared with her mother Mildred. They went into that bathroom and they saw that bloodied palm print. And thank goodness, they literally cut it out of the wall to save it for future analysis. The detectives, the investigators, looked through that apartment. They took photos. There were no signs of forced entry. And they obtained the phone records from the house phone on that west side apartment. Then as the warm summer months of 1997 came to an end, for whatever reason, this investigation into the brutal murder of Tanya Pipes went cold. Ice cold. Five years before this brutal murder, this court instructed law enforcement officers throughout the state of Illinois as to how they could request and receive grand jury subpoenas for the collection of non-invasive evidence such as palm prints. This court in May 1991, Will County Grand Jury, set the standard for this type of a subpoena that there must be some showing, not an elevated showing, not a heightened showing, some showing of individualized suspicion and relevance. This court gave instruction that that showing could be done, not through an exhaustive recitation of the investigation, but it could be done through a brief summary of the investigation. And in April of 2004, that's exactly what the state's attorney, the grand jury state's attorney did in this case. When she went before the grand jury, when she told the grand jury, albeit not mentioning Tanya Pipes' name, when she told the grand jury about this murder that happened back in 1997 to a woman and that there was a palm print left right next to her body, she told that grand jury that the defendant was that victim's ex-boyfriend at the time and he was serving a natural life sentence in the Illinois Department of Corrections. Why does that rise to a level of individual suspicion because he's been incarcerated? It allows the grand jury to be more suspicious of him being a convicted felon. Although not propensity evidence only has certain limited ways of coming into an actual criminal trial, there's absolutely no prohibition of it from being presented to the grand jury. So as the ex-boyfriend, as a convicted felon, as a habitual criminal serving a life sentence, that grand jury could be more suspicious of the defendant in this case. But the state's attorney didn't stop there when she informed them that he was the ex-boyfriend, that he was incarcerated serving a life sentence. She told them and explained to them the relevance of that palm print and why they needed to take palm prints of the defendant. She explained to the grand jury that although undoubtedly fingerprinted as a convicted felon, it wasn't necessarily the case that someone was palm printed. And she asked for a grand jury subpoena to be issued. But Mr. Allen, can any grand jury give this authority for a subpoena? There was no ongoing investigation on this matter. Well, there's always been a close interworking relationship between the state's attorney's office of a particular county and a grand jury sitting in that county. I mean, the investigation could have been started by the grand jury saying, you know, there's this whole... But it wasn't, was it? It was not, no. But I would argue to this court that by granting the subpoena, they are engaging in the investigation. It matters not that the state's attorney first brings it up. The state's attorney, the grand jury, and the police have historically always had a close working relationship. It's codified in the Criminal Code of Procedure under Article 112. But Mr. Allen, then wouldn't this grand jury that granted the subpoena should have seen the return of the subpoena? The information? The actual prints themselves? The grand jury that issued the subpoena. Isn't it normally that they receive the information back since they authorized it? It normally is. And the trial court in the second motion to quash the subpoena found that there was a misstep or a mistake when the detective went and got the palm prints that were taken by the Illinois Department of Corrections. And instead of taking them to the grand jury first, there was a mistake, a misstep, taking them to the crime lab first. But the trial court was very clear in its finding. It didn't grant any relief because it found that in that second motion to quash the grand jury subpoena, that the defendant wasn't prejudiced. That this mistake, this misstep, didn't prejudice him. Because had those prints simply been returned to the grand jury for a second, for a day, for a week, they could have immediately thereafter been taken for testing and analysis. So although a misstep in not returning them to the grand jury, it's not a misstep that should warrant Fourth Amendment exclusionary relief in this case. What the detective did was take it to the crime lab. It was tested. And it was found within a month, if not earlier, sooner, that it matched. Those palm prints taken from the defendant, the right hand matched that bloody palm print. But that wasn't the only involvement of the grand jury in the spring of 2004. Because after they were informed that the defendant's right hand matched that palm print, they ordered the taking of his DNA as well. Which was done. A buccal swab was taken. It was given to the lab. It was tested. And it matched. It matched the male DNA profile from Tanya Pipe's vaginal swabs that were taken at the medical examiner's office. Historically, the grand jury has had many purposes. One of which is to exonerate people under suspicion. The other responsibility is to build evidence for probable cause. And that's exactly what they were doing in this case when they initiated an investigation by granting that request for the defendant's palm prints. Opposing counsel has called the state's attorney rogue. That this is a rogue investigation. This is an end around. This was all done on the record with a court reporter in front of the grand jury. After she made her showing through this brief summary, she asked the grand jurors, do you have any questions about this subpoena for this palm print of this incarcerated person? The foreperson went on the record and said, are there any questions? There were no questions. No questions asked. The state's attorney left to allow the grand jury in secrecy to decide whether they wanted to investigate this. And they returned. They properly returned this subpoena based on the individualized suspicion and relevance that was presented to them through that brief, not rogue, brief summary of the investigation. Investigation continued. After the DNA was found to match Tanya's body, detectives went down. And they spoke to him. He had an explanation for all their evidence and everything they were talking about. But as those detectives left and went back up north to Chicago, the defendant kept talking. He kept talking and he confessed to one of his friends in the Illinois Department of Corrections. Through that confession, we learned at trial why Tanya had to die. She died over a dispute over drug money. I'm sorry, drugs, not drug money. The evidence that was amassed in the spring of 2005, a year later, when the grand jury indicted the defendant for his ex-girlfriend's murder was overwhelming. Faced with this mountain of evidence, the defendant's attorney prior to trial filed not one, but two separate motions seeking to quash the grand jury subpoena for the taking of his palm prints. The first motion alleged that there was not sufficient facts presented to the grand jury to issue that subpoena for his palm prints. The trial court heard arguments, read the motions, read the actual words that the state's attorney put on the record and gave to the grand jury before leaving and allowing them to decide whether to return a subpoena. And that trial court said, yes, there was enough. There was enough facts, he used the word particularized facts, to cross. Cross the threshold that this court laid out for law enforcement throughout Illinois. There was a showing of independent, excuse me, individualized suspicion and relevance through that brief summary. A second motion was written and argued. Again, alleging an abuse of the grand jury procedure for exactly what Justice Tice was inquiring about. The non-return, the non-return of these known palm prints from Jerry Boston's hands, that was an abuse of the grand jury that should warrant the quashing of that grand jury subpoena and all the evidence fruits that flowed therefrom. A second trial court, different from the first court, heard that second motion, read what was presented, listened to each side's arguments, and decided, yes, there was a mistake, there was a misstep, but there was no prejudice. Because had they simply taken those palm prints back to the grand jury for a second, a minute, a day, that would have sufficed. No prejudice here whatsoever. The first district in affirming the defendant's conviction found that there was overwhelming evidence of the defendant's guilt in the murder of his ex-girlfriend. They addressed each of the two motions that were filed by defendant's attorney at the trial level. The appellate court found that there was a sufficient showing, there was a sufficient showing of individualized suspicion and relevance. Through that, state's attorneys' brief summary to that grand jury. There was, excuse me, Mr. Allen? Yes. I'm still concerned about the process with regard to the grand jury. And the documents or transcripts that were being sought, they're supposed to be relevant to the matter being prosecuted by the state's attorney, according to 725 ILCS 5-112-4B. So here this information that was being sought by the prosecutor was not prosecuting or investigating in that case that they were hearing. So that's my concern. So if that section of Article 112 were to be given paramount importance, there would never be any grand jury subpoenas or search warrants because there hadn't been a true bill of indictment yet. But you weren't seeking a bill of indictment at the time you were presenting that information. You were just seeking a subpoena to get information that you might present for an indictment process. Absolutely. And that's exactly what this court authorized in May, Will County, 1992. 91, excuse me. The decision was in 92. This court said that for non-invasive evidence to be taken, home prints specifically in this case, there did not need to be probable cause. So as opposing counsel gets up here and says, they went around, they did an end around in this rogue presentation, this court authorized that separate seeking of non-invasive evidence, such as palm prints. It expanded and acknowledged that there was a zone of privacy that went further than the Fourth Amendment, but it gave instruction to law enforcement. And as much as opposing counsel wants to talk about rogue state's attorneys and rogue investigations and inner briefs, she talks about the consulting state's attorney that when they didn't think there was probable cause, that this was an end around. I think that was her language here today. In her briefs, this consulting conversation between the detective and we'll just call him the consulting state's attorney, it cites the two motions to quash, which start off with the language based on information and belief. There's absolutely nothing in the record to establish that this happened whatsoever. But that aside, let's just assume that it happened here. Let's assume that that detective went to the first consulting, we'll call him the consulting ASA. Hey, this is what I got. We've got Tanya Pipe's dad back in 1997. Her ex-boyfriend is in jail serving a life sentence and we may have received information, we've got information that he may be involved. Is that enough for probable cause to quash this? That's not enough for probable cause for a warrant to take his palm prints or probable cause to take invasive evidence from him. Let's assume the state's attorney did say no. What in the world is wrong with that? A detective is not a lawyer. Probably never read this court's opinion in grand jury 1991 Will County. There's not enough for probable cause. But guess what? If you're only seeking palm prints, our Supreme Court has told us that we only have to show some showing of individualized suspicion and relevance. And that can be done through a brief summary of the criminal investigation. Didn't the court say that that brief summary should be done by an affidavit by the state's attorney? It started off, it said it could be done by an affidavit. But I submit to you that as an officer of the court, that state's attorney should not be able to do that. If the state's attorney, who was not wrote, her name was on the record, that state's attorney is better than... I'm certainly not accusing the state's attorney of doing anything improper. These are issues that there's a statute that deals with the grand jury, there's certainly case law that deals with the grand jury, and concerns about the court's oversight of the grand jury process and whether the grand jury process is, in fact, functioning as it should. And that's the only issue before us, not whether the state's attorney was doing something wrong or not. But the question is, the court said when there's not enough for a warrant, then there would have to be some kind of showing. And specifically in that case, the court talked about an affidavit, a statement under oath by the state's attorney. And that didn't occur here. It did not occur here. But the state's attorney, the named state's attorney presenting the request for that grand jury, as an officer of the court, is assumed to be sworn at all times when presenting. Well, I would suggest that they would be. And everything the state's attorney says is the same as an affidavit? When they present statements before a tribunal, a court, a grand jury, they are under obligations to present statements before a tribunal, a court, a grand jury, and to present statements before a grand jury. Obligations to be truthful. Ethical obligations. Obligations in your oath as a lawyer, as a state's attorney. And I would submit to you that the statement by a state's attorney is actually better. Actually talking. Just as in this case, she asked if there were any questions. She simply just wrote out a sworn statement and gave it to the grand jury. Then the grand jury, there would be absolutely no interplay, no questions that could be asked. Here, the state's attorney presented her brief summary of the investigation. She asked if there were any questions. The foreperson inquired. There were no questions. There's absolutely nothing wrong about a grand jury state's attorney presenting evidence to the grand jury in this way. Article 112 also says that the state's attorney, the grand jury shall hear evidence presented by the state's attorney. It doesn't say only by affidavit. It just says evidence. And in this case, that was evidence, that statement. There are no hearsay requirements in the grand jury that require, obviously, no cross-examination, no hearsay requirements. It allows for the free flow of information so that the grand jury can do what it is supposed to do when it has been delegated with these broad investigative powers. To not only relieve someone under suspicion, but to build probable cause to indict someone. That is what was done in this case in the spring of 2004, leading up to 2005. And we ask that this court affirm. I'm going to back up for one second. The first district, in their opinion, agreed with the trial court that there was a misstep, there was a mistake. The grand jury should have been given the opportunity to make that mistake. And the grand jury should have been touched, received those palm prints. The first district upheld the finding that there was absolutely no prejudice. And it went further and did an analysis, just as Justice Tice was asking earlier, as to whether or not a convicted felon incarcerated serving a life sentence in the Illinois Department of Correction has a reasonable expectation of privacy. Or if his status as a convicted felon serving a life sentence so vastly diminishes his expectation of privacy that we ask this court to find that. That serving a life sentence in the Illinois Department of Correction, even under this dicta and peppers that opposing counsel talks about, this court should not give greater protection to Jerry Boston's jail cell than they should to someone out on the street. It's an absurd argument and we ask you to deny it. We ask you, in affirming Jerry Boston's conviction and second natural life sentence, to tell, to instruct law enforcement officers that they can obtain grand jury subpoenas for non-invasive evidence through this interaction of presenting, continuing to present brief summaries of criminal investigations, not for the taking of invasive evidence, which would require probable cause, but for the non-invasive evidence. We recommend that a court which has the potential evidence for an invasive taking of such things as the defendant's palm prints. Thank you counsel. What counsel just kind of put up for debate was, that this court should affirm where the police don't have probable cause for evidence of a non-physical nature, they can go still. straight to the grand jury and obtain a subpoena. It doesn't matter if that grand jury is involved. Counsel suggests that that's a proper use of the grand jury subpoena power. It is not. The grand jury subpoena power is for its own use. Not for the state's attorney's use, not for the police use. It is to issue subpoenas where they are relevant to an investigation upon which the grand jury is involved. If you take a step back from this case and look at the whole interplay about what happened, the police, the grand jury, and the police are investigating a cold case murder. They go to try to obtain a search warrant for Jerry Boston's palm prints. They're denied. They go before a random grand jury. They obtain the subpoena without the individualized suspicion required by this court. Being an incarcerated felon does not make Jerry Boston more suspicious for Tanya Pipe's murder. It's individualized suspicion. It's not just suspicious. The palm prints are not found. They're never returned to the grand jury. They're never made returnable to the grand jury. If we take a step back and look at what happened here, this is a clear abuse of the grand jury process. And if this court affirms that kind of activity, police will circumvent the Fourth Amendment any time they're looking for evidence of a nonphysical nature. They'll go straight to the grand jury because they don't quite have the probable cause necessary for the subpoena, and they'll get it through the grand jury, which is an abuse of the grand jury subpoena that's not a crime. Tom Pratt not being returned to the jury, not being a relevant matter being prosecuted, those irregularities, I note that there's no remedy spelled out in the statute for a violation of those. So could this court just simply view those as directory rather than mandatory? We acknowledge that there's a prejudice requirement for those issues regarding the return, the sloppy work that, as the trial court said, was done. We don't argue that that alone is the reason for reversal in this case, but that should be looked at within the totality of the circumstances of how the subpoena was obtained, and that should be a factor indicating that this was an independent police investigation, that this was not a proper use of a grand jury subpoena power, and that the sloppy work that happened in regard to getting the palm prints and not returning them, those just show that this was not something that the grand jury was involved in. If there are no further questions? If we think there was enough presented to the grand jury individualized suspicion, it seemed to me the state was arguing that once the state's attorney presented that to the grand jury, it was initiating a prosecution before that grand jury. Would you respond to that? The statute requires that the subpoena may be issued for a people relevant to the grand jury. The prosecution being furthered by the state's attorney or when they're seeking an indictment. Our position is that neither of those things were happening, and again, if you look at the other factors at play here, including that this was never returned to this grand jury, if they had really been opening an investigation into this case, then those palm prints would have been made returnable and returned to that grand jury. If they were asking this grand jury to open up an investigation, one would think they would mention the victim's name and it wouldn't be seeking a John Doe subpoena. I would argue that even if you did find that there was individualized suspicion, they still abused the grand jury subpoena process. But as stated earlier, there was no individualized suspicion in this case. He was the ex- boyfriend. In Will County, you talked about rounding up all the Asians in a community. Would it be okay for the subpoena to be rounded up? Would it be okay for the state to seek subpoenas for every single one of Tanya Pipe's ex-boyfriends? There was nothing here that connected him to the murder in the statement made by the grand jury. For that reason, this court should reverse the appellate court's decision. Thank you. Case number 118661, People of the State of Illinois v. Jerry Boston, will be taken under advisement as agenda number two. Ms. Curry and Mr. Allen, we thank you for your arguments this morning. You're excused at this time. Marshall, the Supreme Court, stands adjourned.